IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE FRY, | ) | |
| | ) | CASE NO. 1:19 CV 2307 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| TIM SHOOP, Warden, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Respondent. | ) | **AND ORDER** |
| | ) | |

**INTRODUCTION**

Before the Court in this capital habeas corpus case is Petitioner Clarence Fry's motion for leave to amend his petition. (Doc. No. 58.) Fry seeks to add a new claim based on newly discovered evidence that at least one juror at his 2006 trial was opposed to sentencing him to death but was somehow "instructed" that she had no other option than to vote for the death penalty because Fry had waived his right to present mitigation evidence. (Doc. No. 58-1 at 2.)[1] Respondent has filed a brief in opposition to the motion (Doc. No. 59), to which Fry has replied (Doc. No. 60). Because the proposed claim is barred by the statute of limitations, the Court denies Fry's motion.

**RELEVANT PROCEDURAL HISTORY**

---

[1] For ease of reference, all citations to page numbers of documents filed in the Court's electronic court filing system ("ECF") are to the ECF-assigned page numbers of the individual documents, not to the documents' original page numbers or the ECF "PageID" numbers.

Fry was convicted and sentenced to death in an Ohio state court in 2006 for the aggravated murder of his former girlfriend, Tamela Hardison.  *See State v. Fry*, 125 Ohio St. 3d 163, 163-68 (Ohio 2010).  His convictions and sentences were affirmed on direct appeal and post-conviction review.  *See Fry*, 125 Ohio St. 3d at 163 (direct appeal); *State v. Fry*, No. 28907, 2019 WL 1318562, at *8 (Ohio Ct. App. March 20, 2019) (post-conviction review).

Fry filed in this Court a notice of intent to file a petition for writ of habeas corpus on October 3, 2019, and was appointed counsel the following day.  (Doc. Nos. 1, 7.)  He filed his petition on August 6, 2020, asserting twenty-four claims for relief.  (Doc. No. 21.)  Respondent filed a return of writ on September 28, 2020.  (Doc. No. 24.)  Fry filed a traverse on August 11, 2021. (Doc. No. 32.)  He then filed a motion for discovery (Doc. No. 36) on September 24, 2021), which was denied (Doc. No. 41).  Respondent filed a sur-reply on September 30, 2021.  (Doc. No. 37.)  Fry filed a renewed motion for discovery (Doc. No. 42) on January 5, 2022, which also was denied (Doc. No. 47.)

On August 26, 2022, Fry filed a motion to stay this habeas action and hold it in abeyance while he litigated a motion for new trial he had filed in state court a few weeks earlier.  (Doc. No. 54.)  The motion was based on new evidence uncovered by his federal habeas counsel in the process of "[meeting] and interview[ing] as many jurors as possible."  (*Id*. at 4.)  The evidence was presented in an affidavit of Juror Jennifer Mulé, who attested:

> I do not recall ever considering life without parole [LWOP] as an option.  We as a jury would have preferred to recommend LWOP.  No one wanted to recommend the death penalty; however, we were instructed that we could not recommend LWOP because Mr. Fry waived mitigation.  We were told that there was nothing to offset the death penalty.  Based on this, I felt the only choice we really had was to give Mr. Fry the death penalty.

(Doc. No. 58-1 (Proposed Amendment) at 6 (¶ 5) (Mulé Aff.).) Based on this evidence, Fry claimed that his constitutional rights were violated when, "[r]egardless of the presence or lack of any formal flaw in the instructions as provided by the court, at least one juror voted for death because she felt she had no other option." (Doc. No. 54 at 4.) Fry explained that prior counsel had interviewed "some" jurors during state post-conviction proceedings, but "no juror revealed what Juror Mulé has now revealed nor did the contents of prior interviews suggest that the jurors felt they had no choice in their deliberation regarding Fry's death sentence." (*Id*. at 6.) Respondent opposed the motion. (Doc. No. 55.)

The Court denied the motion, because habeas courts are permitted to stay cases in which the petition contains a claim that was not exhausted in state courts, barring federal habeas review, and Fry's petition did not contain such a motion. (Doc. No. 57 at 3-4.) Moreover, the Court rejected Fry's argument that it could essentially sidestep moving to amend his petition before moving to stay the case because his motion demonstrated that he could meet habeas pleading requirements. (*Id*. at 4.) It concluded that Fry's motion did not describe his proposed new claim with the requisite level of specificity as to its factual allegations or legal grounds. (*Id*.)

Now, Fry has filed a motion for leave to amend his petition (Doc. No. 58), with the proposed amendment attached (Doc. No. 58-1), seeking to add the new claim that was the subject of his motion to stay – namely, that he was denied his constitutional rights to a fair trial and individualized sentencing determination because "at least one juror voted for death despite wanting to vote for life because she erroneously believed she had no other choice" (*id*. at 1 (capitalization altered)).

**ANALYSIS**

3

Federal Civil Rule 15 allows a habeas petitioner to amend or supplement a petition once as a matter of course within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1)(B); *see also* 28 U.S.C. § 2242 (habeas actions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Fed. R. Civ. P. 81(a)(4) (federal civil rules "apply to proceedings for habeas corpus"); Habeas Corpus Rule 12 (federal civil rules apply in habeas cases "to the extent that they are not inconsistent with any statutory provisions or [the habeas] rules"). Here, that time expired more than thirty-one months ago. (*See* Doc. No. 21.)

Rule 15 permits amendment after that initial time period only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). It instructs courts to "freely give leave when justice so requires." (*Id.*) In determining whether to grant leave to amend, courts may consider "'[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . .'" *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). "Delay by itself is not sufficient reason to deny a motion to amend[,]" while "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id*. at 341-42 (quoting *Brooks*, 39 F.3d at 130).

Federal habeas corpus actions, however, also are subject to the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244(d)(1).

Fry argues in support of his motion that the proposed amendment: (1) would serve the interests of justice because it will "allow[] the Court to efficiently consider the additional supporting evidence on the merits at an early stage of the case" and avoid the risk of him losing

4

the opportunity to litigate the new claim; (2) poses no unjust delay because this case is in its "early stages" with no previous amendments, discovery or evidentiary hearing; and (3) would not prejudice Respondent because it seeks to add just one new claim. (Doc. No. 58 at 2-4.)

Respondent opposes the motion on four grounds: (1) the evidence upon which the proposed new claim is based, a juror's affidavit regarding her thoughts and impressions during the sentencing deliberations, has been available since the jury was discharged in June 2006; (2) the proposed amendment is untimely under AEDPA's one-year statute of limitations; (3) the proposed new claim is based on inadmissible evidence, making further litigation of this claim futile; and (4) the proposed new amendment is also futile because the proposed new claim is unexhausted and therefore barred from habeas review. (Doc. No. 59 at 2-13.)

In response, Fry contends: (1) the new claim does not fall outside the AEDPA's statute of limitations because the juror's thoughts and impressions during sentencing deliberations could not have been discovered through the exercise of due diligence until the juror chose to disclose the information; (2) the proposed new claim is unexhausted, but it will now create a "mixed petition" and provide a basis for a motion to stay the claim while he litigates the new claim in state courts[2]: and (3) fundamental fairness "mandates" that the proposed new claim be heard in both state and federal court. (Doc. No. 60 at 2-7.)

The Court agrees with Respondent that Fry's motion to amend must be denied because his proposed claim is barred by the statute of limitations. As noted above, AEDPA established a one-

---

[2] The Court is drawing an inference on this point. Fry states that he is "seeking" a stay, and claims the amendment will provide state courts with "adequate time to fully consider the constitutional issues that Fry has raised[,]" but he cites to his motion to stay (Doc. No. 54), which already has been resolved and denied (Doc. No. 57) and which he has not renewed. (Doc. No. 60 at 4-5.)

5

year statute of limitations period for the filing of federal habeas corpus petitions by state prisoners. *See* 28 U.S.C. § 2244(d)(1). This limitations period runs from the latest of four circumstances:

> (A) the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Fry's judgment of conviction and sentence became final on August 6, 2019, when the Ohio Supreme Court denied jurisdiction over his appeal of the appellate court's affirmance of the trial court's denial of post-conviction relief. (*See* Doc. No. 9 at 1.) Under § 2244(d)(1)(A), therefore, Fry's one-year limitations period expired on August 6, 2020, the date he filed his petition. (*See* Doc. No. 11 at 1-2; Doc. No. 21.)

Fry argues that his proposed juror-confusion claim is timely under § 2244(d)(1)(D), however, because he did not discover the factual predicate of the claim until June 10, 2022, the date on which Juror Mulé executed her affidavit attesting to the jury's mistaken belief that they were obligated to sentence him to death. (Doc. No. 60 at 3.) As this discovery was the latest of § 2244(d)(1)'s triggering events, he maintains, pursuant to § 2244(d)(1)(D), the statute of limitations did not begin to run until the affidavit's execution date, and his motion for leave to amend the petition, filed on December 20, 2022, was within the one-year limitations period. (*Id.*)

6

The petitioner bears the burden of proving that he exercised due diligence in his search for the factual predicate of his claim in order for § 2244(d)(1)(D) to apply. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) (citing *Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir. 2001)). This provision does not require the "'maximum feasible diligence, only 'due,' or reasonable, diligence.'" *Id.* at 470 (quoting *Granger v. Hurt*, 90 Fed. Appx. 97, 100 (6th Cir. 2004)). But "[a]n application that 'merely alleges that [the petitioner] did not actually know the facts underlying his . . . claim'" is insufficient to show due diligence. *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002) (quoting *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997)). Accordingly,

> "The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered [the juror's confusion about capital sentencing]. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence."

*DiCenzi*, 452 F.3d at 470 (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). *See also Townsend v. Lafler*, 99 Fed. Appx. 606, 608 (6th Cir. 2004) ("The question under this provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care.").

Here, Respondent notes that Fry has had sixteen years – including vigorously litigated state direct appeal and post-conviction proceedings – to discover this information from Juror Mulé, as his trial concluded on June 26, 2006, and the trial judge instructed jurors at that time that they could "'discuss this case with anyone . . . .'" (Doc. No. 59 at 2 (quoting Doc. No. 14-2 (Trial Tr.) at 542-43).) The Court adds that, contrary to Fry's assertion that this case is in its "early stages," these habeas proceedings have been pending since October 2019, when he filed his notice of intent

7

to file and counsel was appointed, and it was fully briefed by the parties by the end of September 2021. Yet Fry did not file this motion to amend until more than one year later, on December 20, 2022.

As evidence of his due diligence in seeking this information from Juror Mulé, Fry explains that post-conviction counsel, of which one of Fry's habeas counsel states she was one, "sought interviews with each of the jurors from Fry's panel[,]" but they "could not interview all the jurors at that time . . . ." (Doc. No. 60 at 2.) He states that post-conviction counsel also "requested discovery more than once, but the state court denied those requests[,]" so that "if a juror declined to be interviewed, or failed to return Fry's counsel's correspondence," or "failed to offer specific information" when interviewed by Fry's counsel, "that fault should not fall on Fry." (*Id.*) As to Juror Mulé specifically, Fry states only that "until [she] offered this information to Fry's habeas counsel in her executed affidavit, Fry was not and could not have been aware of it." (*Id.*) "Diligence cannot mandate constantly pestering a juror to glean information," he adds, "that the juror may or may not even have within her knowledge." (*Id.*)

Fry has not satisfied his burden of demonstrating due diligence in discovering Juror Mulé's professed misunderstanding of Ohio sentencing law for purposes of § 2244(d)(1)(D). Fry's account of his various counsel's efforts to interview the jurors in general and Juror Mulé in particular over these many years is vague and incomplete as to what counsel actually did and when they did it. Perhaps most significantly, Fry does not indicate whether Juror Mulé was among the jurors who post-conviction counsel interviewed, none of whom, according to Fry, suggested that they were "instructed" or "told" that they had no option but to sentence Fry to death because of his mitigation waiver. If she was among those jurors, why did she not disclose her confusion then?

8

And if she was not, what steps were taken to contact her at that time?[3] Fry also does not say when those initial interviews of the jurors took place, a notable omission as Fry's post-conviction proceedings spanned twelve years, from 2007 to 2019. If post-conviction counsel did not attempt to contact or interview jurors or specifically Juror Mulé until a later stage of those proceedings, that would be significant in assessing due diligence under § 2244(d)(1)(D).

Fry is right that for purposes of § 2244(d)(1)(D), diligence does not require "constant pestering" of potential witnesses. But without a full and frank history of what Fry's counsel actually did to investigate the jurors' understanding of sentencing laws, the Court is left to speculate as to when a prisoner in Fry's position – with competent appointed counsel at every level of state and federal proceedings over sixteen years – should have discovered Juror Mulé's confusion. *See DiCenzi*, 452 F.3d at 470. It is Fry's burden "to show why he did not discover [this issue] earlier, given that the acts complained of occurred during his [2006] trial." *Stokes*, 36 Fed. Appx. at 805 (affirming dismissal of petition as barred by AEDPA statute of limitations and rejecting petitioner's argument that petition was timely under § 2244(d)(1)(D) where petitioner failed to show that he could not have discovered predicate facts for his claim of ineffective assistance of counsel earlier than the date on which potential mitigation expert signed her affidavit). And that he has not done.

## Conclusion

Accordingly, for the reasons stated above, the Court denies Fry's motion for leave to amend the petition (Doc. No. 58).

---

[3] The Court notes that Juror Mulé was the foreperson of Fry's jury (*see* Doc. No. 14-2 (Trial Tr.) at 539) – a fact that Fry does not mention in his briefs – and presumably would have been of great interest to Fry's post-conviction counsel.

9

IT IS SO ORDERED.

Dated: March 10, 2023
                                         s/*Pamela A. Barker*
                                         PAMELA A. BARKER
                                         UNITED STATES DISTRICT JUDGE